# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| TONY PAUL MASTERS, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> COMMISSIONER OF SOCIAL SECURITY, ) </br> ) </br> Defendant. ) | Case No.: 5:16-cv-01267-JHE |

## MEMORANDUM OPINION[1]

Plaintiff Tony Paul Masters ("Masters") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Social Security Income ("SSI"). Masters timely pursued and exhausted his administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED** and this action is **REMANDED** for further proceedings.

.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

## I. Factual and Procedural History

Masters filed an application for a period of disability and DIB on March 7, 2012, (Tr. 291-293) and an application for SSI on March 21, 2012, alleging disability beginning September 30, 2011. (Tr. 294-298). Masters was a thirty-eight year old male on December 31, 2012, his date last insured. ("DLI"). (Tr. 76, 103). Masters has an eighth-grade education and past relevant work as a truck driver and a heavy equipment operator. (Tr. 12-13, 73). The Commissioner initially denied Masters' application, (Tr. 168), and Masters requested a hearing before an ALJ where he appeared on April 4, 2013. (Tr. 54-75, 181). A supplemental hearing was conducted on January 30, 2014. (Tr. 34-53). After the hearings, the ALJ denied Masters' claim on February 20, 2014. (Tr. 73). Masters sought review by the Appeals Council (Tr. 232-234), which vacated the ALJ's decision and remanded the case on June 5, 2014. (Tr. 110-112). Another hearing was held on November 25, 2014 (Tr. 9-33), and on March 6, 2015, the ALJ again denied Masters' claim. (Tr. 140-165). Masters again requested review by the Appeals Council (Tr. 5-6), but it denied the request on June 3, 2016. (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner. On August 3, 2016, Masters initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

3

last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

4

At Step One, the ALJ found Masters met the insured status requirements of the Social Security Act through December 31, 2012, and that Masters had not engaged in substantial gainful activity since September 30, 2011, the alleged onset date of his disability. (Tr. 146). At Step Two, the ALJ found Masters has the following severe impairments: early degenerative changes of the cervical spine and degenerative disc disease of the lumbosacral spine with history of prior laminectomy at L5-S1 with posterior lumbar interbody fusion in 2005. (*Id.*). The ALJ also considered Masters' mental impairments of borderline intellectual functioning and depression and determined they were not severe. (Tr. 147-148). At Step Three, the ALJ found Masters does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 148).

Before proceeding to Step Four, the ALJ determined Masters' residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Masters has the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). He can lift and/or carry up to 10 pounds frequently and 20 pounds occasionally. At any one time, he can sit for up to three hours, stand for one hour and walk for one hour. In an eight-hour workday, he can sit for four hours, stand for two hours and walk for two hours. He can continuously reach overhead with either hand as well as finger and feel objects on a continuous basis. He can frequently reach in all other directions and frequently handle, push and pull with the hands within the range of light work. He can occasionally work at unprotected heights, around moving parts, around odors, fumes and other pulmonary irritants, he can occasionally be exposed to extremes of cold and heat and to vibration. He can frequently operate a motor vehicle and frequently be exposed to humidity and wetness.

(Tr. 148).

At Step Four, the ALJ determined Masters is unable to perform any past relevant work. (Tr. 156). At Step Five, the ALJ determined, based on Masters' age, education, work experience,

5

and residual functional capacity, there are jobs that exist in significant numbers in the national economy Masters could perform. (Tr. 157). Therefore, the ALJ determined Masters has not been under a disability and denied Masters' claim. (Tr. 157-158).

## V. Analysis

Masters contends the ALJ erred in three ways: (1) improperly assessing the opinion of clinical psychologist Dr. Alan D. Blotcky, (2), failing to find Masters' mental impairments are severe, and (3) improperly applying the Eleventh Circuit pain standard for disability. Substantial evidence supports the ALJ's assessment of Dr. Blotcky's opinion and analysis of Masters' mental impairments, and there is no basis to reverse his decision based on those alleged errors. However, the ALJ's application of the Eleventh Circuit pain standard is internally inconsistent and merits reversal for clarification.

### A. The ALJ properly evaluated Dr. Blotcky's opinion

Masters argues the ALJ improperly discounted Dr. Blotcky's opinion by assigning it lesser weight because it was obtained at the request of Masters' counsel. (Doc. 17 at 20). Dr. Blotcky prepared a psychological evaluation report after examining Masters on March 11, 2013, opining that Masters suffered from major depression and possessed borderline intellectual abilities. (Tr. 519). Dr. Blotcky also completed a medical source opinion form in which he checked boxes concerning Masters' functional limitations, noting "marked" limitations in Masters' ability to respond appropriately to supervisors; respond appropriately to customers or other members of the general public; use judgment in detailed or complex work-related decisions; deal with changes in a routine work setting; respond to customary work pressure; and maintain attention, concentration, or pace for periods of at least two hours. (Tr. 520-21). On the same form, Dr. Blotcky found "moderate" limitations in Masters' ability to respond

6

appropriately to coworkers; use judgment in simple one- or two-step work related decisions; understand, remember, and carry out simple one- or two-step instructions; understand, remember, and carry out detailed or complex instructions; maintain social functioning; and maintain activities of daily living. (Tr. 520-21).

An ALJ considers many factors when weighing opinion evidence, such as whether the physician treated the claimant and whether the opinion is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). "[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm. Of Soc. Sec.*, 363 F.3d 1436, 1439 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). A source will not be considered a treating source if the relationship between the source and the claimant was not based on a need for treatment or evaluation and is instead based solely on a need to support a claim for disability. 20 C.F.R. §§ 404.1502, 416.902.

Here, the ALJ offered several reasons for giving little weight to Dr. Blotcky's opinion. He noted that the opinion had been prepared at the request of Masters' attorney and was "obviously obtained for the purpose of qualifying for disability benefits" due to the fact Masters had not previously sought or received treatment from a psychologist, psychiatrist, or mental health treatment facility. (Tr. 154). He noted there had been no follow-up to Dr. Blotcky's one-time examination. (*Id.*). The ALJ also found the opinion lacked support in the record. He observed no physician ever recommended psychological or psychiatric intervention or noted a deficiency in Masters' intellectual status. (*Id.*). The ALJ found Dr. Blotcky's opinion that Masters has a borderline intellect inconsistent with Masters' work history of performing skilled and semiskilled work and with his ability to obtain a commercial driver's license, which the ALJ

7

noted was scheduled to expire not due to a medically established cause but because of inaction on Masters' part. (*Id.*).

Masters' objection to this finding is that the ALJ took into account that Dr. Blotcky's examination was performed at his attorney's request, and he implicitly accuses the ALJ of putting his thumb on the scale by not similarly discounting consultative examinations paid for by the Social Security Administration. (Doc. 17 at 20). However, the ALJ was entitled to consider this fact to establish that Dr. Blotcky was a nontreating source. Masters points to no specific opinion he believes erroneously received greater weight than Dr. Blotcky's notwithstanding it came from a nontreating source; notably, the regulations explicitly confirm that "an acceptable medical source who is a consultative examiner for [the Social Security Administration]" and who is not a claimant's treating source is included in the definition of "nontreating source," *see* 20 C.F.R. § 404.1502.1, putting those examiners on the same footing as Dr. Blotcky. Finally, Masters takes no apparent issue with the ALJ's determination that Dr. Blotcky's opinion was inconsistent with the record. Masters' allegation of error is meritless, and substantial evidence supports the ALJ's decision to assign Dr. Blotcky's opinion little weight.

**B. The ALJ did not err in evaluating Masters' mental impairments**

Masters contends that the ALJ should have found his mental impairments to be severe during step two of the sequential evaluation process. (Doc. 17 at 19). He points to the chronic nature of his depression and argues the ALJ did not consider his mental impairments at all at step two. (*Id.*).

For an ALJ to determine a claimant has a severe impairment, a claimant must have an impairment or combination of impairments which limits the claimant's ability to do basic work activities for at least twelve consecutive months. 20 C.F.R. §§ 404.1520(c), 404.1509. The

claimant bears the burden of proving that a severe impairment exists. 20 C.F.R. § 416.912. For mental impairments, the ALJ considers four broad functional areas in rating the degree of a claimant's functional limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3) (2011); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C (Sept. 29, 2016) (discussing the four criteria of mental disorder listings).

Here, contrary to Masters' assertion, the ALJ considered Masters' alleged mental impairments at step two. Preliminarily, the ALJ observed that Masters' borderline intellectual functioning did not affect his ability to perform the work-related activities involved in skilled and semiskilled work, which was supported by the vocational expert's testimony that Masters had performed such work. (Tr. 73, 146-47). The ALJ also found no more than mild impairment in any of the four broad functional areas. The ALJ found mild limitation in Masters' activities of daily living, noting Masters prepares simple meals, watches television, and visits with friends and family. (Tr. 147). He also found Masters' social functioning was mildly limited, as Masters spent time with one friend and visited his sister. (*Id.*). Third, the ALJ determined Masters had mild limitation in concentration, persistence, and pace, citing Masters' ability to maintain attention and focus well enough to drive and perform simple cooking tasks, as well as the fact that he watches television. (*Id.*). Finally, the ALJ found Masters had experienced no episodes of decompensation of extended duration. (*Id.*). The ALJ noted Masters had been hospitalized for a suicide attempt, but that it was an isolated incident (and not of "extended duration") because it was resolved after less than a week in the hospital. (*Id.*). Thus, the ALJ concluded Masters' mental impairments were not severe.

To rebut this, Masters says that his depression has been a chronic concern and did not "suddenly become 'better'" as a result of his hospitalization for his suicide attempt. (Doc. 17 at 19). He also cites Dr. Blotcky's findings. (*Id.*). As stated above, the ALJ's decision to assign little weight to Dr. Blotcky's opinion was supported by substantial evidence. While Masters states his depression was not cured by his visit to the hospital, this is not inconsistent with the ALJ's finding; the ALJ noted Masters had some transient episodes of depression, but determined that the most serious of those, the episode of depression for which Masters was hospitalized, resolved after less than a week in the hospital. (Tr. 147). This is supported by the medical records of Masters' hospitalization, which indicate progress from "[m]ood depressed and irritable . . . [j]udgment poor . . . [t]hought content suicidal ideation with no intent at present . . . [b]ehavior isolative, withdrawn and impulsive" on admission (April 2, 2014) to "mood stabilized with pharmacotherapy along with group therapy, activity therapy, and individualized therapy . . . much improved condition and cognitively intact . . . denied suicidal ideations, homicidal ideation and denied auditory or visual hallucinations . . . compliant with medications with no adverse effects" and a prognosis of "[g]ood with continued treatment on an out-patient basis and medication compliance" on discharge (April 9, 2014). (Tr. 638-40). The ALJ did not determine Masters' depression and borderline intellectual functioning were nonexistent, but that they did not limit his ability to work. This conclusion is supported by substantial evidence, even assuming the truth of Masters' contention that his depression was and remains a chronic condition. *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (evidence that depression and anxiety existed is not dispositive of whether it affected ability to perform basic work skills). Therefore, there is no basis to reverse the ALJ's finding.

### C. The ALJ erred in applying the Eleventh Circuit pain standard

Masters finally alleges the ALJ improperly applied the Eleventh Circuit's pain standard when assessing his testimony. (Doc. 17 at 20). The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p. If an ALJ

discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

The Commissioner states the ALJ engaged in a "thorough review of Plaintiff's subjective complaints in accordance with the appropriate regulatory criteria and with Eleventh Circuit case law." (Doc. 20 at 14). While it is true the ALJ devoted a substantial portion of his decision to reviewing Masters' testimony and the medical evidence in the record, he offered directly contradictory and irreconcilable conclusions about whether Masters' subjective complaints satisfied the pain standard. Before the ALJ's evaluation of the medical evidence, the ALJ wrote that "*[n]either prong of part two of the standard is met, since the objective evidence does not confirm* either the severity of the claimant's alleged symptoms arising from his medically documented conditions or *that those conditions could reasonably be expected to give rise to the symptoms alleged by the claimant*." (Tr. 149) (emphasis added). He reiterates this conclusion after discussing the medical evidence. (Tr. 155). However, the ALJ then states he found "*that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;* however, the claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible for the reasons explained in this decision." (Tr. 156) (emphasis added). In the next paragraph, the ALJ returns to his earlier conclusion, stating he "must conclude that *the objective evidence does not confirm . . . that those*

12

*conditions could reasonably be expected to give rise to the symptoms alleged by the claimant.*" (Tr. 156) (emphasis added).

The Commissioner chooses to analyze the ALJ's decision as supported by the third of these findings: that Masters facially satisfied part one and prong two of the second part of the pain standard, but that his testimony was not entirely credible concerning the intensity, persistence, and limiting effects of the symptoms he alleged. (Doc. 20 at 15). This ignores the other three instances in which the ALJ found Masters had not satisfied the pain standard *at all*. The undersigned cannot speculate as to which of these mutually exclusive findings the ALJ intended to support his decision, notwithstanding they both potentially lead to the same conclusion. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm "simply because some rationale might have supported the ALJ's conclusion"). In order to conduct a meaningful review of an ALJ's decision, it is necessary he or she provide "[a] clear articulation of both fact and law." *Id.* at 1514–15 (11th Cir. 1984). The ALJ offered no such clear articulation here, and thus the undersigned cannot review the ALJ's application of the pain standard to determine whether it is supported by substantial evidence. Therefore, the claim must be remanded again.[4]

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security

---

[4] The undersigned notes the ALJ's initial decision in this claim was vacated and remanded by the Appeals Council in part because (similar to his error here) the ALJ inconsistently found that Masters' borderline intellectual functioning was both severe and non-severe. (Tr. 110).

13

denying Masters' claim for a period of disability and DIB is **REVERSED** and the action is **REMANDED** for the ALJ to reconcile his inconsistent findings regarding the Eleventh Circuit pain standard, as discussed above.

DONE this 25th day of September, 2017.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE